IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARDY JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-2218-L |
| | § | |
| PATE REHABILITATION | § | |
| ENDEAVORS, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant Pate Rehabilitation Endeavors, Inc.'s ("Defendant" or "Pate") Motion for Summary Judgment (Doc. 45), filed February 16, 2016. After careful consideration of the motion, briefs, appendices, record, and applicable law, the court **grants in part** and **denies in part** Defendant Pate Rehabilitation Endeavors, Inc.'s Motion for Summary Judgment.

### I.      Procedural and Factual Background

Plaintiff Hardy Jones ("Plaintiff" or "Jones") filed this action against Defendant on June 17, 2014. Plaintiff filed his second amended complaint ("Amended Original Complaint") on February 25, 2015. Jones asserts claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and retaliation under Title VII and the ADEA. Plaintiff seeks compensatory damages for front and back pay; mental anguish; loss of enjoyment of life; out of pocket expenses; and inconvenience. He also seeks liquidated damages for malicious and reckless indifference in publicly humiliating him and discriminating against him; punitive damages; and reasonable and necessary attorney's and expert fees, and costs.

On February 16, 2016, Defendant moved for summary judgment.  Plaintiff filed a response to Defendant's motion for summary judgment on March 18, 2016.  On April 1, 2016, Defendant filed a reply in support of its motion for summary judgment and objections to Plaintiff's summary judgment evidence.  Specifically, Defendant requests that Plaintiff's Declaration ("Declaration") be stricken in its entirety as a sham affidavit based on inconsistencies between the Declaration and Jones's prior deposition testimony.  Defendant also requests that the court strike the affidavits of Arrie Alberty ("Alberty") and Omer Gurey ("Gurey") because they contain subjective and conclusory statements that are not based on personal knowledge. Plaintiff did not file a response to Defendant's objections.

The court now sets forth the facts in accordance with the standard in Section II of this opinion. Jones began his employment with Pate on March 24, 2005, as a patient transporter.  Pl.'s App. 3, ¶¶ 4, 5.  At the time Jones was hired, he was over forty years old.  *Id.* ¶ 4.  Over the course of his employment with Pate, Plaintiff was involved in several automobile accidents.  On March 18, 2009, Jones was in a company vehicle for his personal use after his scheduled work hours and was struck by another vehicle that ran a red light.  Def.'s App. 35.  Plaintiff received a written warning for violating company policy.  *Id.*  On April 23, 2012, Jones hit a parked car while backing out of an apartment complex.  *Id.* at 40.  On October 9, 2012, Plaintiff was involved in an accident in a company van.  The van was hit from behind, and there were three patients in it.  *Id.* at 39.  On December 10, 2013, Plaintiff was involved in another accident while driving a company van.  *Id.* at 31.  Jones also had a number of written warnings over the course of his employment.  *Id.* at 29-46.

During the times relevant to this civil action, Defendant had in place a License Verification Policy ("Policy") regarding employees who drive as part of their job responsibilities.  Def.'s App.

14, 15.  The Policy classified a driver as acceptable, marginal, or unacceptable, based on the number of accidents or moving violations attributable to him or her within the past three years from the date of application.  The Policy provided as follows:

**Evaluation of Data**

The following should be used as a guideline for determining the acceptability of drivers:

Acceptable driver:

- No accidents or moving violations in the past three (3) years from the date of application.

- One accident or moving violation in the past three years (3) years from the date of application.

Marginal driver:

- Two (2) accidents in the past three (3) years from date of application.

- Two (2) moving violations in the past three (3) year period from date of application.

- One (1) accident and one (1) moving violation in the past three (3) years from date of application.

Unacceptable driver:

- Three (3) or more accidents in the past three (3) years from date of application.

- Three (3) or more moving violations in the past three (3) years from date of application.

- Any combination of three (3) or more accidents or moving violations in the past three (3) years from date of application.

- Any conviction for any one (1) of the following:  reckless driving, hit and run, leaving the scene of an accident, DWI, DUI, or a felony involving the use of a motor vehicle within the last five (5) years.

> o  Driver[']s license is currently suspended.
>
> o  Driver has restriction of ["]Occupational Driving Only.["]

*Id.* Pursuant to Defendant's application of the Policy, Plaintiff was classified as a marginal driver following the October 9, 2012 accident, and he was classified as an unacceptable driver following the December 10, 2013 accident. *Id.*

Also, during the time relevant to this action, Defendant had in place a Corrective Action Policy ("CAP") that outlined the company's disciplinary procedures. *Id.* at 20. The CAP provided in pertinent part:

> Unacceptable behavior which does not lead to immediate dismissal may be addressed in the following manner:
>
> - Verbal discussion with Supervisor regarding the incident/action
> - First Written Warning
> - Second Written Warning
> - Termination
>
> **Step One: Verbal Discussion**
>
> The supervisor will meet with the employee to discuss the problem or violation, making sure the employee understands the nature of the problem or violation and the expected remedy. The purpose of this conversation is to remind the employee of exactly what the rule and performance expectations are. The supervisor should document the contact for the file.
>
> **Step Two: First Written Warning**
>
> If performance does not improve, or if the employee is again in violation of Pate Rehabilitation practices, rules or standards of conduct, the supervisor will discuss the problem with the employee, emphasizing the seriousness of the issue and the need for immediate remedy of the problem. The employee will be advised that he/she is now at the second formal level of corrective action. At the meeting, the discussion, employee response, and the agreements made regarding change will be documented. The employee will be asked to sign the document, and the form will be sent to the employee's personnel file. The First Written Warning will remain in effect for twelve months.

**Step Three: Second Written Warning**

If performance does not improve within the twelve-month period following the First Written Warning, or if there is another violation of Pate Rehabilitation practices, rules and standards of conduct, the employee will be given a Second Written Warning.  The employee will be asked to sign the document and a copy will be placed in the personnel filed.

**Step Four: Termination**

If performance does not improve within the twelve-month period following the Second Written Warning, or if there is another violation of Pate Rehabilitation practices, rules and standards of conduct, employment may be terminated.

*Id.* at 20-21.

Plaintiff states that coworkers "embarrassed and discriminated against [him]" because of his age.  Pl.'s App. 8, ¶ 46.  Plaintiff states that his coworkers called him "old" in the presence of clients and other coworkers.  *Id.*  Jones states that supervisors Jackie Graham ("Graham") and Sandra Gonzalez ("Gonzalez") called him an "old man" and "indicat[ed] that [he] was not able to load the vans due to [his] age."  *Id.* at 8, ¶ 47.  Plaintiff also states that around 2010, Gonzalez "started holding her little finger up, talking about [his] little eeny-weeny penis."  *Id.* at 6, ¶ 28. Plaintiff states that Graham joined Gonzalez in making the gesture with her finger and talking about the size of his penis.  Plaintiff also states that Graham and Gonzalez would refer to his penis as "little eeny-weeny taquito."  *Id.* ¶ 29.  At the time, Plaintiff was under the supervision of Dennis Bernal ("Bernal"), who subsequently left the company sometime in 2011.  Plaintiff acknowledges that he did not report any complaints to Bernal.  *Id.* ¶ 34.  The record is not clear as to the specific date; however, at some time after Bernal's departure, Gonzalez became Jones's acting supervisor, and Graham also served in a supervisory capacity, as she signed Plaintiff's warnings and employee counseling records.

Plaintiff states that in 2011, Pate had a get-together for his birthday and presented him with a birthday card signed by several employees.  *Id.* ¶ 35.  The card "had a little rubber thimble and [a] Viagra pill taped inside the card" and the phrase "Hardy's Condom" written under the thimble. *Id*. ¶ 36.  Plaintiff did not report the card to Bernal or Anna McDonald, the Human Resources Manager.  *Id.* at 7, ¶ 44.  At some unspecified time during his employment, Graham showed Jones a picture of a penis on her cellular phone.  Pl.'s App. 127.

In early 2013, Plaintiff confronted Gonzalez directly and told her to "stop talking about [his] penis and calling [him] old."  *Id.* at 9, ¶ 55.  On January 18, 2013, Plaintiff received a First Written Warning, dated January 2, 2013, for unsafe driving and insubordination.  *Id.* at 51; Def.'s App. 29.  The warning stated:

> On December 27, Hardy was observed talking on the cell phone while driving and transporting a patient.  This is a violation of policy (Transportation Policy 9.18 . . .) and a safety issue.
>
> On December 28, when Sandra Gonzalez asked Hardy if he had the paperwork for a patient, his response was[,] "What the hell do you think?"  He left without ever actually answering her question.
>
> Hardy has been trained over the years on safety issues while driving and is aware that using cell phones while driving patients is both a policy and safety violation.  In addition, Hardy was in an accident in April 2012 where he hit a parked car[,] and he has been talked to about his attitude and creating a negative atmosphere.

*Id*.  Plaintiff states that the incident was "not brought up until after [he] confronted Gonzalez about her discriminatory comments."  Pl.'s App. 9, ¶ 56.  The court takes this to mean that Plaintiff was not given the warning until after he confronted Gonzalez in early 2013 about her previous comments.

In March 2013, Plaintiff informally complained to Graham that he was offended by her and Gonzalez "walking around with their fingers up in the air talking about [his] little eeny-weeny

penis and calling him old." *Id.* at 8, ¶ 49.  According to Plaintiff, Graham said that she would talk

with Gonzalez, and that she and Gonzalez were only joking. *Id.* ¶ 50.  In his Declaration, Plaintiff

states that the comments never stopped. *Id.*

In September or October 2013, Plaintiff complained to Graham about Greg Bloom

("Bloom") embarrassing him because of his age in front of clients by stating that Jones should be

in a wheelchair, instead of the clients. *Id.* ¶ 51.  He also reported that another coworker insulted

him and called him an "old motherf___r." *Id.*  According to Plaintiff, Graham stated that she

would talk to the other employees.  Plaintiff did not report his complaints to the president or vice-

president of the company.  Pl.'s App. 9, ¶ 53.

On October 29, 2013, Plaintiff received a Second Written Warning for inappropriate

behavior.  The warning stated:

> While making arrangements for a coworker to handle Hardy's route while
> he was on vacation, Sandra Gonzales told Hardy that the coworker wanted to pick
> the van up from TL.  Hardy responded that he wasn't going to "leave the damn van
> at TL," then walked out of the office.  Later that day[,] Sandra overheard Hardy
> and Omer arguing[,] and she heard Hardy call Omer a punk.  Sandra asked what
> was going on[,] and Hardy responded by cursing and saying that it was none of her
> business.  Sandra asked Hardy to calm down[,] but he continued cursing.

*Id.* at 49.  Plaintiff was informed that the warning "serves as his 2nd Written Warning" pursuant

to the CAP. *Id.*  In his Declaration, Jones states that in October or November 2013, he complained

to McDonald that he was being discriminated against by Graham, Gonzales, and Bloom because

of his sex and age.  Jones did not receive an annual evaluation in 2013. *Id*. at 10, ¶ 60.

Plaintiff was terminated on December 11, 2013, following his third car accident in a three-

year period.  Pl.'s App. 42.  The employee counseling record stated:

> Hardy received a 1st Written Warning on 1/2/13 for unsafe driving and
> insubordination.  Hardy received a 2nd Written Warning on 10/29/13 for
> inappropriate behavior towards his acting supervisor.  On 12/10/13, Hardy was in
> an accident in the company van with patients.  Hardy has had two additional

accidents since April 2012 (4/23/12 and 10/29/2012).  Per company policy, a driver who has had three or more accidents within three years is considered an "unacceptable driver."

*Id.*  Plaintiff was 73 years old at the time of his termination.  *Id.* at 3, ¶ 4.

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

## III.   Plaintiff's Title VII Sex Discrimination Claim

### A.      Legal Standard

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin."   42 U.S.C. § 2000e–2(a)(1).  As Jones offers only circumstantial evidence of discrimination, his Title VII claims are analyzed using the modified *McDonnell Douglas* burden-

shifting paradigm.  *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).  To survive a motion

for summary judgment under the modified *McDonnell Douglas* paradigm, a Title VII plaintiff

must first establish a *prima facie* case of discrimination by a preponderance of the evidence.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community*

*Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To establish a *prima facie* case of discrimination,

a plaintiff must show that: (1) he is a member of a protected class, (2) he was qualified for the

position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated

less favorably because of his membership in that protected class than were other similarly situated

employees who were not members of the protected class, under nearly identical circumstances.

*Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Lee v. Kansas City S. Ry. Co.*, 574

F.3d 253, 259 (5th Cir. 2009) (addressing racial discrimination claim).

"In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by

showing 'either that he did not violate the rule or that, if he did, [employees outside the protected

class] who engaged in similar acts were not punished similarly.'"  *Mayberry v. Vought Aircraft*

*Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967,

968 (5th Cir. 1980)).  To establish a *prima facie* case in the second manner, the plaintiff "must

show that . . . employees were treated differently under circumstances 'nearly identical' to his."

*Id.* (citations omitted).  "The employment actions being compared will be deemed to have been

taken under nearly identical circumstances when the employees being compared held the same job

or responsibilities, shared the same supervisor or had their employment status determined by the

same person, and have essentially comparable violation histories."  *Lee*, 574 F.3d at 260 (footnotes

omitted).

Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citations and internal quotation marks omitted). If the employer sustains its burden, the inference of discrimination disappears, and "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* (citation omitted). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated [his] employer's decision, such as through evidence of disparate treatment, or that [Pate's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citations and internal quotation marks omitted).

### B.  Analysis

#### 1.  *Prima Facie* Case

##### a. First Alternative – Whether Jones Committed a Work-Rule Violation

A *prima facie* case may be established by showing that a plaintiff did not violate the work rule for which he was disciplined. For reasons stated later in this opinion, Jones did not violate the rule, as the Policy simply did not apply to him. Jones has shown that he was disciplined *after* the three-year period for which the Policy is applicable. The court, therefore, determines that Jones has established a *prima facie* case on this basis.

**b.  Second Alternative – Whether Females or Others Who Engaged in Similar Conduct Were Treated More Favorably**

Although Jones was a member of a protected class, was qualified for the position in question, and was the subject of an adverse employment action, his *prima facie* case under this alternative, nevertheless, fails because of the fourth element, that is, whether he was treated less favorably because of his membership in a protected class.  Although Jones asserts that Tina Jones, a female, is a proper comparator, nothing in the record supports that she had three accidents and was similarly situated to him, or that he was treated differently under nearly identical circumstances because of his sex.

For reasons discussed later in this opinion, even though Defendant misapplies its Policy, there is nothing in the record to indicate that the misapplication of the Policy was based on Plaintiff's sex.  Evidence in the record establishes that Tina Jones had two accidents within a three-year period, and she was not terminated.  Thus, even had Pate correctly applied its Policy, Tina Jones would not have been discharged.  Moreover, there is no evidence in the record to establish that Tina Jones and Plaintiff held the same job or responsibilities, shared the same supervisor, had their employment status determined by the same person, or had a comparable violations history.  For the reasons stated, Jones has failed to establish that a genuine dispute of material fact exists regarding the fourth element of his sex discrimination claim under the second alternative, and, thus, the second alternative cannot serve as a basis for a *prima facie* case.

**2.      Legitimate, Nondiscriminatory Reason**

As Jones has established a *prima facie* case under the first alternative, the court addresses whether Pate has set forth a legitimate, nondiscriminatory reason for Jones's discharge.  Defendant contends that Jones was discharged for a legitimate, nondiscriminatory reason, namely, that he

was involved in three automobile accidents within a three-year period.  Although the rule was incorrectly applied to Jones, and Pate, therefore, made an erroneous decision for reasons discussed later in this opinion, it has set forth a legitimate, nondiscriminatory reason.  That the rule was misapplied is of no moment at this juncture.  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."  *Mayberry*, 55 F.3d at 1091.   The court, therefore, determines that Pate has set forth a legitimate, nondiscriminatory reason for discharging Jones.

### 3.      Pretext

The court now turns to the issue of pretext.  Jones has not shown that he was treated differently because of his sex.  He has not provided evidence to show that he was intentionally discriminated against because of his sex.  What Jones has established is that Pate has ineptly and wrongfully applied and interpreted its Policy; however, he has not established that Pate misinterpreted and misapplied the Policy because of his sex.   An erroneous decision is not synonymous with intentional discrimination.  To hold that Pate intentionally discriminated against Jones because of his sex would be based on sheer speculation and conjecture, which are insufficient to defeat a motion for summary judgment or create a genuine dispute of material fact.  To hold that Pate wrongfully applied and interpreted the Policy because of Jones's sex would require a quantum leap of logic, which this court cannot make based on the state of the record.  As Jones has failed to create a genuine dispute of material fact regarding intentional sex discrimination, Pate is entitled to judgment as a matter of law on this claim.

### C.      Failure to Exhaust Administrative Remedies

Defendant also contends that Plaintiff's sex discrimination claim is barred as a matter of law because he did not exhaust his administrative remedies as they pertain to this claim.  The

record is not fully developed regarding this claim, and the court has concerns that certain evidence is taken out of context and, therefore, is misleading. Because of the state of the record on this issue, the court declines to address Defendant's argument regarding this issue.[1, 2]

## IV. Plaintiff's ADEA Claim

### A. Legal Standard

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action. *Id.*; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). It is therefore insufficient under the ADEA for a plaintiff to show that age was a motivating factor. *Gross*, 557 U.S. at 175. "But-for" cause means the cause without which the challenged adverse employment action or event would not have occurred. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).

---

[1] Insofar as Plaintiff attempts to assert a hostile workplace sexual harassment claim in response to Defendant's Motion for Summary Judgment, such claim is not before the court. Plaintiff did not assert a hostile workplace sexual harassment claim in his EEOC charge or Amended Original Complaint. Fifth Circuit precedent "has made [it] clear that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015) (internal citations and quotations omitted).

[2] Defendant relies on *Faragher v. City of Boca Raton* to assert an affirmative defense, as it contends that it had written policies in place to prevent discrimination, and Plaintiff acknowledges that he did not take advantage of these policies. 524 U.S. 775, 807 (1998). This defense, however, is not available when the sex discrimination by a supervisor culminates in a tangible employment action, such as discharge. *Id*. at 808. As Plaintiff has alleged sex discrimination by his supervisor and was later discharged, the affirmative defense is not available.

A plaintiff may prove employment discrimination with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)).  Jones does not base his claims on direct evidence that Pate discriminated against him; therefore, his case relies instead on circumstantial evidence.

The burden-shifting framework set forth in *McDonnell Douglas Corporation*, 411 U.S. at 802-04, applies to ADEA cases based on circumstantial evidence of discrimination. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).  To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).  As previously stated, in work-rule violation cases, a plaintiff "may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry*, 55 F.3d at 1090 (internal citation omitted).   To establish a *prima face* case in this manner, the employee "must show that [employees outside the protected class] were treated differently under circumstances 'nearly identical' to his." *Id.* (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Once a plaintiff establishes a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Machinchick*, 398 F.3d at 350.  This is a burden of production, not persuasion, on the defendant's part, and it

"can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the [defendant] articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922. "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine dispute of material fact as to whether this reason was pretextual.'" *Id.* (citation omitted). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted)).

### B.      Failure to Exhaust Administrative Remedies

Jones filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 18, 2014. Defendant contends that any of Plaintiff's ADEA claims based on conduct that occurred before September 19, 2013, the 180th day before March 18, 2014, are barred as a matter of law. This is an incorrect statement of the law. Because Texas is a deferral state, the limitations period for filing an ADEA charge with the EEOC is 300 days. *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 384 (5th Cir. 2002) (citing 29 U.S.C. § 626(d)). Accordingly, claims that relate to conduct that occurred before May 22, 2013—more than 300 days before March 18, 2014—are barred for failure to exhaust administrative remedies. Therefore, the court does not address any of Jones's allegations of age discrimination prior to May 22, 2013, and now turns to conduct occurring after this date. There were several alleged incidents of age discrimination after this date. Plaintiff stated that the comments by his supervisors continued after this date. He also stated that a coworker called him an "old motherf____r" after this date.

### C.      Analysis

#### 1.      Prima Facie Case

With respect to the elements to establish a *prima facie* case for age discrimination, Plaintiff has shown that he was over forty years of age and in the protected class at the time of his termination.  Plaintiff asserts that he was qualified for the position because the Policy on which Defendant based its decision to fire him applies only to applicants.  Plaintiff further states that he was replaced by a younger driver, but he does not provide any evidence by affidavit, declaration, deposition, or otherwise to support this assertion; however, there is evidence in the record that he was terminated for the three-accident rule, while a younger driver was not.  Alberty was employed by Defendant as a driver from February 2011 until November 2013.  Pl.'s App. 21, ¶ 3.  Gonzalez was his acting supervisor, and Graham was his transportation supervisor.  *Id.* ¶ 4.  Alberty was involved in four accidents between March 2, 2012, and October 28, 2013.  Def.'s App. 45.  Alberty was 28 years old when he started his employment with Pate and 31 years old when it ended.  Pl.'s App. 21, ¶ 1.

In a case in which the defendant demonstrates that the plaintiff was discharged for violation of a work rule, a plaintiff may establish a *prima facie* case by showing that either he did not violate the rule or that, if he did, employees outside the protected class who engaged in similar acts were not punished similarly.  *Mayberry*, 55 F.3d at 1090.  Plaintiff acknowledges that he was involved in three accidents in three years, but he contends that the rule was discriminatorily applied to him because of his age.  Pl.'s App. 4, ¶ 11.  He asserts that the Policy was not applied to Alberty, a younger driver outside of the protected class.  Pl.'s App. 21, ¶ 1.  Evidence in the record shows that Alberty was involved in four accidents within a two-year period, and he was not terminated for violating the Policy.  Def.'s App. 45, 6, ¶ 14.  Moreover, for reasons later discussed, the court

concludes that Pate misapplied its own Policy.  The court determines that Jones has established each of the four elements necessary to establish a *prima facie* case of age discrimination.

### 2.       Legitimate, Nondiscriminatory Reason

Defendant contends that Jones was discharged for a legitimate, nondiscriminatory reason, namely, having three automobile accidents within a three-year period.  Violation of a business's policies, rules, handbooks, or manuals is a legitimate reason to discharge an employee, even if the employer erroneously or incorrectly believed that a work rule was violated.  Thus, Defendant has set forth a legitimate reason for Jones's discharge.

### 3.       Pretext

The court now turns to the issue of pretext.  The court has to decide whether Pate's stated reason was pretext for intentional age discrimination.  A close and plain reading of the Policy does not square with the actions taken by Defendant.  With respect to the section of the Policy that classifies a person who has three accidents within a three-year period as "unacceptable," a plain reading indicates that it applies only to *applicants* and for a period of three-years "from the date of application."   Nothing in the record states, or even intimates, that this Policy applies to a driver who has worked for Defendant once the three-year period has elapsed.  In other words, Defendant has failed to explain to the court why its inartfully drafted Policy even applied to Jones.  In its reply, Pate makes a feeble attempt to do so by stating that the Policy "contains **ongoing** requirements for drivers."  Def.'s Reply 1.  The Policy itself does not support Pate's argument.  Without explanation, Defendant applies this Policy to a "moving" or "rolling" three-year period in which a driver has three or more accidents, notwithstanding the absence of any support in the record for this application and interpretation.  Defendant states unequivocally that Jones "was terminated for cause for a violation of company policy; namely, being involved in three accidents

within a three[-]year period of time." Def.'s App. 6 ¶ 13.  There may be legitimate reasons for which Plaintiff was terminated, but the reason relied on and explained by Defendant is not supported by the record.[3]  Moreover, a younger driver, Alberty, had *four accidents* within a *two-year period*, and he was not terminated by Defendant for violating the Policy.  Pate's averment that Alberty was not discharged because it did not know that he had four accidents within a two-year period may ultimately be believed by the trier of fact, but the statement certainly raises issues of credibility at this stage regarding the real reason for Jones's discharge.  Specifically, that an employer would not have knowledge of its employment records is an explanation that requires examination by a jury.

In light of Pate's wrongful interpretation and application of its Policy, and its failure to discharge a *younger driver* with four violations in a *two-year period*, a reasonable jury could disagree that Defendant's stated reason for Plaintiff's discharge was the true or real reason for terminating him, and find that the stated reason was pretext for intentional age discrimination.  If the Policy had provided that a driver would be classified as unacceptable for being involved in three accidents in *any* three-year period, this might present a different result as to a genuine dispute of material fact.  Perhaps, this is how Pate has historically applied and interpreted the Policy, but such application and interpretation are clearly contrary to its plain language.  Ultimately, Defendant may convince a jury that its reason or reasons for discharging Plaintiff were not a pretext for intentional age discrimination; however, since there is a genuine dispute of material fact as to the true reason for Plaintiff's discharge, summary judgment is not appropriate, and this claim must

---

[3] Defendant also contends that Plaintiff's termination was nondiscriminatory because he was terminated after a third policy violation subsequent to two written warnings pursuant to its CAP.  The basis of Defendant's third violation, however, is the Policy in question.  Def.'s App. 31.  As previously stated, Defendant has provided no basis for its application of this Policy to Jones following the expiration of the three-year period after the date of his application for employment had elapsed.

**Memorandum Opinion and Order - Page 19**

be decided by the jury. Accordingly, the court will deny dismissal of Plaintiff's age discrimination claim.

## V.     Plaintiff's Title VII and ADEA Retaliation Claims

### A.     Legal Standard

To establish a *prima facie* case of retaliation under Title VII and the ADEA, a plaintiff must show: (1) that he engaged in a protected activity; (2) that there was an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor*, 276 F.3d at 692. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557. Once a defendant asserts such a reason, the inference of retaliation raised by the *prima facie* showing drops from the case. *Montemayor*, 276 F.3d at 692. At this point, summary judgment is appropriate unless the plaintiff can raise a genuine dispute of material fact as to whether the defendant's rationale is pretextual. *Septimus v. University of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64

(2006).  Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted).  In so ruling, the Court rejected Fifth Circuit authority, *id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)).  In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and, therefore, they do not constitute conduct that is "materially adverse." *Id.* at 68.

B.     **Analysis**

Defendant contends that Plaintiff's retaliation claims were not timely filed and that Plaintiff, therefore, did not exhaust his administrative remedies as to his retaliation claims, and the claims are barred.  The court agrees.

In *Gutpa v. East Texas State University,* the court held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." 654 F.2d 411, 414 (5th Cir. 1981).  The *Gupta* exception, however, does not apply when the alleged retaliation occurs before the filing of the EEOC charge.  *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007) (internal citation omitted); *Williams v. AT&T, Inc.*, 356 F. App'x 761, 766 (5th Cir. 2009) (explaining that the *Gupta* exception does not apply when the alleged acts of retaliation occur prior to the plaintiff's filling of his EEOC charge).  Plaintiff filed his EEOC

charge on March 18, 2014, asserting claims for sex and age discrimination.  The basis of his retaliation claims is that he was discharged on December 11, 2013, for engaging in protected activity when he complained in October or November 2013 about allegedly discriminatory comments from his supervisor.

As the alleged retaliation occurred on December 11, 2013, and Jones did not file his charge until March 18, 2014, his retaliation claims do not fall within the *Gupta* exception.  Therefore, Plaintiff was required to file a charge of retaliation with the EEOC; and he cannot rely on *Gupta* to argue that he was not required to file a charge of retaliation regarding age and sex discrimination with the EEOC.  For these reasons, Jones has failed to exhaust his administrative remedies with respect to his Title VII and ADEA retaliation claims, and these claims are barred as a matter of law.  Accordingly, there is no genuine dispute of material fact as to Plaintiff's Title VII and ADEA retaliation claims, and Defendant is entitled to judgment as a matter of law.

## VI.    Evidentiary Objections

Pate raises several objections to Jones's Declaration, the affidavits of Alberty and Gurey, and exhibits submitted as summary judgment evidence.  Defendant requests that the court strike Plaintiff's Declaration in its entirety because of inconsistencies between the Declaration and Jones's prior deposition testimony.  Defendant also requests that the court strike the affidavits of Alberty and Gurey because they contain conclusory and subjective testimony unsupported by facts, inadmissible hearsay, and information outside of their personal knowledge.  Jones did not respond to Pate's objections. The court has only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure and the summary judgment standard herein enunciated. In particular, the court has considered the specific facts of Alberty's affidavit, such as his age; his supervisor; the number of accidents he had within a two-year period; and that he was not fired for being involved in those accidents, as these are matters that are within his personal knowledge.  The

court, however, did not consider any statements of Alberty that were conclusory, conjectural, or speculative.  Accordingly, the objections are **overruled as moot.**

## VII.    Conclusion

For the reasons stated herein, the court **concludes** that there is no genuine dispute of material fact as to Plaintiff's Title VII sex discrimination and retaliation claims, and his ADEA retaliation claim; **concludes** that Pate is entitled to judgment as a matter of law on these claims; and **concludes** that there is a genuine dispute of material fact as to Plaintiff's ADEA age discrimination claim. Accordingly, the court **grants** Defendant Pate Rehabilitation Endeavors, Inc.'s Motion for Summary Judgment with respect to Plaintiff's Title VII sex discrimination and retaliation claims, and ADEA retaliation claim, and **dismisses** them **with prejudice**. The court **denies** Defendant Pate Rehabilitation Endeavors, Inc.'s Motion for Summary Judgment with respect to Plaintiff's ADEA age discrimination claim.  The age discrimination claim remains for trial, and an amended scheduling order will be entered by separate document.

**It is so ordered** this 17th day of June, 2016.


Sam A. Lindsay
United States District Judge