# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| HARDY JONES, | § | |
| Plaintiff, | § § § | |
| v. | § | Civil Action No. **3:14-CV-2218-L** |
| PATE REHABILITATION ENDEAVORS, INC., | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for New Trial or to Alter or Amend Judgment (Doc. 107), filed January 12, 2017. After careful consideration of the motion, response, record, and applicable law, and for the reasons stated herein, the court **denies** Plaintiff's Motion for New Trial or to Alter or Amend Judgment.

## I.  Background

Plaintiff Hardy Jones ("Plaintiff" or "Jones") filed this action against Defendant Pate Rehabilitation Endeavors, Inc. ("Defendant" or "Pate") on June 17, 2014. Jones amended his complaint on February 25, 2015, asserting claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and retaliation under the ADEA and Title VII.

On June 17, 2016, the court granted in part and denied in part Pate's summary judgment motion. Specifically, the court granted Pate's summary judgment motion with respect to Jones's Title VII sex discrimination and retaliation claims, and his ADEA retaliation claim, and dismissed

**Memorandum Opinion and Order – Page 1**

these claims with prejudice. The court denied Pate's summary judgment motion with respect to Plaintiff's ADEA discrimination claim, and it proceeded to trial.

The trial took place before the court and a jury on December 7, 8, 9, 12, 13 and 14, 2016. The jury found in answer to Question No. 1 that Jones did not prove by a preponderance of the evidence that, but for his age, Pate would not have discharged him on December 11, 2013. The court entered a final judgment in favor of Pate in accordance with its Memorandum Opinion and Order (Doc. 57) and the jury verdict. The judgment adjudged, ordered, and decreed that Jones take nothing against Pate; that the action be dismissed with prejudice; that all allowable costs be taxed against Jones; and that all relief not granted in the judgment was denied.

Jones states that his motion is brought pursuant to Federal Rules of Civil Procedure 59(a), 59(e), and 60(b). Pl.'s Mot. for New Trial 1. Plaintiff also states that he is alternatively asserting that judgment as a matter of law should have been granted in his favor. In his motion for new trial or to alter or amend the judgment, Jones contends that: (1) the jury's verdict is clearly contrary to the evidence and that he proved his ADEA claim by a preponderance of the evidence; (2) the evidence at trial established that Pate's reasons for firing Jones were false and shown to be a pretext for intentional age discrimination; and (3) the jury based its verdict on evidence not in the record and was unduly influenced by pernicious comments made by the court. For the reasons that follow, the court disagrees. Because Plaintiff misapprehends, misapplies, and misinterprets the evidence, and takes matters out of context, the court will not expend scarce judicial resources addressing each of his misconceptions and red herrings. The court devotes its attention to why Plaintiff's motion is without merit.

II.    Standards

   A.    Motion for New Trial – Rule 59(a)

A court, upon motion, may "grant a new trial on all or some of the issues" to any party after a jury trial, for any reasons for which a new trial has heretofore been granted in an action at a law in federal court." Fed. R. Civ. P. 59(a)(1)(A). New trials may be granted if a district court determines that the "verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (footnote and citations omitted). The appeals court reviews the denial of a motion for trial for an abuse of discretion. A "district court abuses its discretion by denying a new trial 'only when there is an absolute absence of evidence to support the jury's verdict.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (citations omitted). If the evidence at trial is legally sufficient to support the jury's verdict, a district court does not abuse its discretion by denying a motion for new trial. *One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (citations omitted). The appeals court is to view the evidence "in the light most favorable to the jury verdict." *Wellogix*, 716 F.3d at 881 (quoting *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). A motion for new trial must clearly show that "a manifest error of law" occurred at the trial. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1991) (citation omitted).

   B.    Motion to Amend or Alter Judgment – Rule 59(e)

A motion to alter or amend the judgment under Rule 59(e) "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). Such motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Marseilles Homeowners Condominium Ass'n Inc. v.*

**Memorandum Opinion and Order – Page 3**

*Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008) (citation omitted). It may not be used to relitigate issues that were resolved to the movant's dissatisfaction. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989). A Rule 59(e) motion may not raise arguments or present evidence that could have been raised prior to entry of judgment. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted).

District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id*. With this balance in mind, the Fifth Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). Stated another way, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

### C. Motion for Relief from a Judgment or Order – Rule 60(b)

The applicable federal rule provides as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)   mistake, inadvertence, surprise, or excusable neglect;
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party,
> (4)   the judgment is void;
> (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6). Although Jones cites this rule as a basis for bringing his motion for new trial or to alter the judgment, he fails to cite the particular subsection on which he is relying. Thus, the court does not know Jones's basis for invoking Rule 60(b). As Jones fails to explain why he is entitled to relief under this rule, the court will deny his motion insofar as he requests relief under Rule 60(b).

### D. Judgment as a Matter of Law – Rule 50(a)

This rule provides in relevant part:

> (a) **Judgment as a Matter of Law.**
>     (1) **In General**. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>         (A) resolve the issue against the party; and
>         (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>     (2) **Motion.** A motion for judgment as a matter or law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).

The court does not recall Plaintiff moving for judgment as a matter of law. In any event, Jones did not satisfy the standard that would entitle him to judgment as a matter of law, as there was no reason for the court to conclude that the jury would not have a legally sufficient basis to find for Pate on the issue of intentional age discrimination. As the court later explains, this was a classic jury case that largely turned on the credibility of the witnesses. The evidence was not so convincing and strong that the court could have granted judgment as a matter of law on behalf of either party, which is why the court denied Pate's Rule 50 motion. Accordingly, Plaintiff's argument that the court should have granted judgment as a matter of law in his favor is without merit.

## III. Discussion

### A. Motion for New Trial

#### 1. Whether the Verdict was Against the Great Weight of the Evidence

In support of his contention that the jury's verdict is clearly contrary to the evidence, Jones discusses and summarizes what he believes the testimony of eleven witnesses establishes. These witnesses are Omer Gurey, Hardy Jones, Joe Jones, Ferman Bell, Barbara Geising, Kent Hayden, Anna McDonald, Jackie Graham, Sandra Gonzalez, Arrie Alberty, and Kent Bogdan. The determination of whether Hardy Jones was a victim of intentional age discrimination turned on the credibility or believability of the witnesses who testified. The reason the court denied Pate's summary judgment motion on Plaintiff's age discrimination claim was because it determined that Jones had raised a genuine dispute of material fact regarding pretext and that Pate would have to convince a jury that the reason or reasons for Jones's discharge were not a pretext for intentional age discrimination.

In its Memorandum Opinion and Order regarding age discrimination and pretext, the court held as follows:

> The court now turns to the issue of pretext. The court has to decide whether Pate's stated reason was pretext for intentional age discrimination. A close and plain reading of the Policy does not square with the actions taken by Defendant. With respect to the section of the Policy that classifies a person who has three accidents within a three-year period as "unacceptable," a plain reading indicates that it applies only to *applicants* and for a period of three-years "from the date of application." Nothing in the record states, or even intimates, that this Policy applies to a driver who has worked for Defendant once the three-year period has elapsed. In other words, Defendant has failed to explain to the court why its inartfully drafted Policy even applied to Jones. In its reply, Pate makes a feeble attempt to do so by stating that the Policy "contains **ongoing** requirements for drivers." Def.'s Reply 1. The Policy itself does not support Pate's argument. Without explanation, Defendant applies this Policy to a "moving" or "rolling" three-year period in which a driver has three or more accidents, notwithstanding the absence of any support in the

record for this application and interpretation. Defendant states unequivocally that Jones "was terminated for cause for a violation of company policy; namely, being involved in three accidents within a three[-]year period of time." Def.'s App. 6 ¶ 13. There may be legitimate reasons for which Plaintiff was terminated, but the reason relied on and explained by Defendant is not supported by the record. Moreover, a younger driver, Alberty, had *four accidents* within a *two-year period*, and he was not terminated by Defendant for violating the Policy. Pate's averment that Alberty was not discharged because it did not know that he had four accidents within a two-year period may ultimately be believed by the trier of fact, but the statement certainly raises issues of credibility at this stage regarding the real reason for Jones's discharge. Specifically, that an employer would not have knowledge of its employment records is an explanation that requires examination by a jury.

In light of Pate's wrongful interpretation and application of its Policy, and its failure to discharge a *younger driver* with four violations in a *two-year period*, a reasonable jury could disagree that Defendant's stated reason for Plaintiff's discharge was the true or real reason for terminating him, and find that the stated reason was pretext for intentional age discrimination. If the Policy had provided that a driver would be classified as unacceptable for being involved in three accidents in *any* three-year period, this might present a different result as to a genuine dispute of material fact. Perhaps, this is how Pate has historically applied and interpreted the Policy, but such application and interpretation are clearly contrary to its plain language. Ultimately, Defendant may convince a jury that its reason or reasons for discharging Plaintiff were not a pretext for intentional age discrimination; however, since there is a genuine dispute of material fact as to the true reason for Plaintiff's discharge, summary judgment is not appropriate, and this claim must be decided by the jury. Accordingly, the court will deny dismissal of Plaintiff's age discrimination claim.

Ct.'s Mem. Op. & Order 18-20 (Doc. 57) (footnote omitted). From the plain reading of this language, it is obvious that the resolution of whether Jones was the victim of intentional age discrimination rested primarily, if not solely, on whom the jury found to be more credible or believable.

With respect to "Credibility and Number of Witnesses," the court instructed the jury as follows:

It is the function of the jury to determine the credibility or believability of each witness and to determine the weight to be given to the witness's testimony. Consider all of the circumstances under which the witness testified: the relationship of the witness to the parties in this case; the interest, if any, the witness has in the

outcome of this case; the witness's appearance, demeanor, and manner of testifying while on the witness stand; the witness's apparent candor and fairness, or the lack thereof; the reasonableness or unreasonableness of the witness's testimony; the opportunity of the witness to observe or acquire knowledge concerning the facts to which he or she testified and the extent to which the witness is contradicted or supported by other credible evidence. You will rely on your own good judgment and common sense in considering the evidence and determining the weight to be given it. You may, in short, accept or reject the testimony in whole or in part of any witness.

Even though a witness may be a party to the action and, therefore, interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

The testimony of a single witness, that produces in your minds the belief in the likelihood of truth, is sufficient for the proof of any fact, even though a greater number of witnesses may have testified to the contrary, if you believe this witness and have considered all the other evidence. In other words, the weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness said or did something, or failed to say or do something, which is inconsistent with the present testimony of that witness. If you believe that any witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget things or remember other things inaccurately; therefore, if a witness has made a misstatement, you need only consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the importance of that may depend on whether it has to do with an important factor or with only an unimportant detail.

Ct.'s Charge to the Jury 3-4 (Doc. 103).

Further, with respect to "Evidence and Inferences," the court instructed the jury as follows:

> Generally speaking, there are two types of evidence that a jury may consider in properly finding the truth as to the facts in this case. One is direct evidence—such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that point to the existence or nonexistence of certain facts. As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that the jury find the facts from the evidence, both direct and circumstantial.
>
> While you must consider only the evidence in this case, you are permitted to draw reasonable inferences and deductions from the evidence. The expression "to draw an inference" means to find that a fact exists based on proof of another fact. An inference may be drawn only if it is reasonable and logical, not if it is speculative. Therefore, in deciding whether to draw an inference, you must consider all the facts in the light of reason, common sense, and experience. After you have done that, the question whether to draw a particular inference is for you to decide.

*Id*. at 5.

Finally, with respect to "Burden of Proof," the court instructed the jury as follows:

> The burden is on Hardy Jones in a civil action such as this to prove every essential element of his respective claims by a "preponderance of the evidence," unless I direct you otherwise on a specific issue. A preponderance of the evidence means such evidence that, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.
>
> In determining whether any fact in issue has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of whom may have called them, and all the exhibits received in evidence, regardless of whom may have introduced them. If the proof should fail to establish any essential element of Hardy Jones's claim by a preponderance of the evidence, you must find against him with respect to that claim.

*Id*. at 6.

In this case, the jury considered and weighed the evidence in favor of Pate and apparently determined that Plaintiff's witnesses were less credible than those of Defendant. Matters regarding

**Memorandum Opinion and Order – Page 9**

credibility and the weight to be given to exhibits and the testimony of witnesses are within the exclusive province of the jury. In ruling on Pate's summary judgment motion, the court explicitly explained why summary judgment was not warranted. At trial, Pate's evidence was much stronger than that it presented at the summary judgment stage. Pate explained to the jury's satisfaction why another driver, Alberty, was not discharged for having four accidents in a two-year period and why Jones was discharged for his accidents. The jury apparently accepted the explanation. Moreover, the jury was convinced that Jones's discharge did not occur but for his age.

This was a classic jury case with competing and conflicting testimony that the jury had to resolve. The court cannot say that the jury's verdict is against the great weight of the evidence, and it concludes that the evidence was sufficient for the jury to render a verdict in favor of Pate. To warrant the granting of a new trial, Jones must establish that "there is an absolute absence of evidence to support the jury's verdict." *One Beacon*, 841 F.3d at 676. Jones falls woefully short of meeting this standard, as the evidence, viewed in the light most favorable to the jury verdict, is clearly not against the great weight of the evidence. Accordingly, this ground cannot serve as a basis to grant a new trial.

Plaintiff contends that the evidence at trial established that Pate's reasons for discharging Jones were false and pretext for intentional age discrimination. The court rejects this argument, as this is Jones's take on what the evidence established. Jones apparently takes the position that Pate's application and interpretation were not consistent with the language of its Policy for drivers. Even if this is true, a discharge that is arbitrary, erroneous, subjective, or unfair is not a violation of the ADEA as long as the discharge was not because of the employee's age. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988). Based on the evidence submitted and the reasonable inferences that could be drawn from the evidence, the court has no pause in

**Memorandum Opinion and Order – Page 10**

concluding that the jury could have reasonably found that Plaintiff failed to establish that Pate's reasons for discharging him as an unsafe driver were pretextual. Accordingly, the court concludes that the jury was well within its authority to find that Jones failed to establish pretext.

### 2. Pernicious Comments by the Court and Objections of Defense Counsel

Jones contends that the jury based its decision on evidence not in the record and that it was unduly influenced by pernicious comments made by the court and objections made by defense counsel. The court finds these arguments wholly lacking in merit, as they are not supported by the record and are based on sheer speculation and conjecture.

Plaintiff accuses the court of instructing his counsel "to hurry up and to move faster" during her questioning of the witnesses. Jones further contends that the jurors "missed a substantial part of the testimony of the first set of witnesses and requested the court to instruct counsel for the plaintiff to move more slowly so that they could understand." Pl.'s Mot. 17. Other than Plaintiff's statement, there is nothing in the record that even intimates that the jury missed a *substantial* part of the testimony of the first two witnesses. Once again, this is an unsupported assumption by Plaintiff.

The court held a bench conference and informed Plaintiff's counsel that the jury had difficulty understanding her because of her accent and because she was talking "too fast." The court informed Plaintiff's counsel of the jury's concern so that she could rectify the situation. Plaintiff's counsel has an accent, and she had a tendency to talk rapidly. The court's admonitions to Plaintiff's counsel to move the case along were not directed toward the pace of counsel's speech but the long delays, which are not reflected in the transcript, that often followed many of the questions asked by counsel. The long pauses after many questions unnecessarily delayed the trial.

**Memorandum Opinion and Order – Page 11**

Plaintiff does not mention the long delays in which his counsel engaged after asking questions. The court's admonitions came only after this pattern had occurred over a period of time.

Moreover, the court specifically instructed the jury regarding objections by counsel and any belief it may have thought the court had about the facts of the case. In this regard, the court instructed the jury as follows:

> You must not consider or be influenced by the fact that during the trial of this case, counsel have made objections to some of the testimony, as it is their duty to do so; and it is the duty of the court to rule on those objections in accordance with the law. Any evidence to which an objection was sustained by the court, and any evidence that was stricken by the court, must be entirely disregarded and not considered by you for any purpose. You are not bound by any opinion that you might think the court has concerning the facts of this case, and if I have in any way said or done anything that leads you to believe that I have any opinions about the facts in this case, you are hereby instructed to disregard it. Further, nothing in these instructions to you is made for the purpose of suggesting to you what verdict I think you should find.

Ct.'s Charge to the Jury 2 (Doc. 103). The court also instructed the jury that "the statements and arguments of counsel are not in evidence." *Id*. at 1. The court's instructions to Plaintiff's counsel regarding the pace of the trial were not prejudicial and were only directed at his counsel so that the trial could move along expeditiously. This action was not a complex case, and, contrary to Plaintiff's assertions, it should have taken no more than four days to try. The court knew from the onset that Plaintiff's counsel was not that familiar with trying cases in federal court. At the beginning of the trial, Plaintiff's counsel acknowledged that she had never selected a jury in federal court and, per her request, the court patiently explained the process to her. Further, Plaintiff did not file his exhibits in accordance with the court's scheduling order. Plaintiff simply filed his summary judgment exhibits as trial exhibits, which were filed not in accordance with the court's scheduling order. Despite this oversight, the court allowed Plaintiff to correct the error and file his trial exhibits out of time, even though Plaintiff could not articulate a satisfactory reason for

**Memorandum Opinion and Order – Page 12**

failing to comply with the court's scheduling order. In the final analysis, the court's statements were directed toward Plaintiff because the evidence discussed or sought to be introduced was not relevant or violated Federal Rule of Evidence 403 in that it was unduly prejudicial, was cumulative, caused undue delay, or wasted time. The court has a duty to control the presentation of evidence, Fed. R. Evid. 611(a), and this is all that it did when it made evidentiary rulings regarding the evidence. The alleged pernicious comments by the court and defense counsel's objections are not grounds to grant a new trial.

### 3. Batson Challenge

In a declaration filed in support of the motion for new trial, Plaintiff complains that an all-white jury rendered the decision against him and that he timely made a challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), that was erroneously rejected by the court. This argument is without merit.

Under *Batson* and its progeny, "parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex." *Rivera v. Illinois*, 556 U.S. 148, 153 (2009). In *Batson*, the Supreme Court outlined a three-prong test that a district court is to use to determine whether a peremptory challenge violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Batson*, 476 U.S. 93-98. As the Fifth Circuit aptly explains:

> [t]o raise a successful *Batson* challenge, a defendant must first make a *prima facie* showing that the prosecutor used a peremptory challenge to strike a juror on the basis of race. Second, if the defendant has made such a showing, the prosecution must then offer a race-neutral basis for the strike. Finally, the district court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013) (citation omitted). Although *Batson* is a criminal case, its holding applies equally to civil cases. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991).

After the parties exercised their strikes, the court showed counsel the persons who would be on the eight-person jury and inquired whether there were any *Batson* challenges. The name of each person to be on the jury was highlighted in green. Plaintiff's counsel stated that she had a *Batson* challenge regarding Jeremy Harden, an African American. Pate exercised a peremptory strike and struck Harden. Harden was fired from his job because of a vehicle accident, which was the same issue, or one substantially similar to that, involved in Plaintiff's case. The court informed Plaintiff's counsel that Plaintiff had not met his burden to show that Defendant struck Harden because of his race and effectively concluded that Plaintiff had not made a *prima facie* showing that Harden was stricken because of his race. The court also held that a valid reason existed for Pate to strike Harden and explained why Pate's striking of Harden was not based on race.

Plaintiff's counsel countered that Harden admitted that the accident for which he was fired was his fault and stated that he could consider the evidence fairly. The court acknowledged that Harden stated that he could be fair. The court pointed out that when it asked Harden whether he believed that he had been treated fairly when he was discharged, Harden, after hesitating, eventually answered "yes." The court held that Pate's striking of Harden did not violate *Batson* and overruled Plaintiff's objection to Harden's exclusion from the jury. As Plaintiff made no *prima facie* showing that Pate's challenge to Harden was based on his race, no *Batson* violation occurred, and *Batson* cannot serve as a basis to grant Jones a new trial.

### 4. Supplemental Jury Instruction

The jury submitted two questions to the court during its deliberations. The questions were set forth in the court's Supplemental Jury Instruction:

**Members of the Jury:**

You have submitted the following questions to the court:
Question No. 1: "When was suit filed?"

Answer: The lawsuit was timely filed pursuant to federal law; therefore, the date this lawsuit was filed is not relevant to any questions that you are required to answer.

Question No. 2: "Can we get the board showing accidents?"

Answer: The jury may not obtain a copy of the board showing accidents. That board is a demonstrative aid used by Pate Rehabilitation in closing arguments. It was not admitted as an exhibit. Documentation showing the accidents was admitted into evidence, and you may review that documentation as you deem necessary.

The court directs you to resume your deliberations in accordance with the Court's Charge to the Jury and this Supplemental Jury Instruction.

Ct.'s Suppl. Instr. to the Jury 1 (Doc. 102).

After several minutes of discussion regarding Question No. 1, Plaintiff's counsel stated, "The court is right; we don't have any objection to this instruction." Having stated that she had no objection with respect to Question No. 1, the court is at a loss as to why Plaintiff now objects to the court's decision not to inform the jury when this action was filed. Plaintiff waived any right to object later to the court's instruction regarding Question No. 1. Further, informing the jury when the lawsuit was filed simply was not relevant. Finally, Plaintiff acknowledged that the instruction was legally correct when Plaintiff's counsel agreed with the court as to the appropriateness of the instruction.

**Memorandum Opinion and Order – Page 15**

With respect to the board that showed the accidents, Plaintiff acknowledges that the court "correctly refused the jury access to the board." Pl.'s Mot. for New Trial 18. Moreover, during the discussion of Question No. 2, Plaintiff never voiced any objection to the court's proposed answer to Question No. 2. Plaintiff's objection appears to be how defense counsel used the demonstrative exhibit in front of the jury. The court finds no merit to this argument, as the whole purpose of using demonstrative exhibits is to assist the jury in understanding facts and issues in the case. As the court explained during the trial, demonstrative exhibits are not available to the jury for viewing during the course of its deliberations. Nothing the court did regarding its answers to the jury's questions is a basis to grant a new trial.

Jones also complains that the jury "rushed" its deliberations. In this vein, Plaintiff contends that, because the court allegedly "kept hurrying" his counsel, the jurors "were in so much of a hurry not to 'waste time' that they could not take the time to deliberate on the admitted evidence but wanted to use the shortcut demonstrative aid of the defendant." Pl.'s Mot. for New Trial 18. This argument is without merit and based on rank speculation.

In the Supplemental Instruction, the court informed the jurors that the demonstrative exhibit was not in evidence, that they could not view the demonstrative exhibit, that documentation showing the accidents was admitted into evidence, and that they could review that documentation as they deemed necessary. Finally, the court instructed the jury as follows: "Unless otherwise directed by the court, during your deliberations you will set your own work schedule, deciding for yourselves when and how frequently you wish to recess and for how long." Ct.'s Charge to the Jury 16 (Doc. 103).

Jones produces not even a scintilla of evidence to support his nonsensical argument that the jury "rushed" its deliberations because of anything the court had done. As the argument lacks

**Memorandum Opinion and Order – Page 16**

any factual or legal support, it cannot serve as a basis for the court to grant Plaintiff a new trial, or to amend or alter the judgment.

### 5. Evidence not in the Record

Jones contends that the "jury improperly based its decision on information not in evidence." Pl.'s Motion for New Trial 2. Plaintiff does not identify the information to which he is referring or provide the basis for this contention. This contention is based on conjecture and speculation, and the record does not support it. Accordingly, this contention cannot serve as a basis to grant Plaintiff a new trial.

### B. Motion to Amend or Alter Judgment

The court finds no basis exists to alter or amend the judgment. The court committed no manifest error of law. Jones is dissatisfied with the result, and he seeks to relitigate the issue of intentional age discrimination that was resolved to his dissatisfaction. The court concludes that Plaintiff has set forth no basis that warrants altering or amending the judgment. As the court previously noted, this case was a classic jury case with the parties vigorously presenting competing and conflicting testimony. That a jury considers the evidence, assesses the credibility of the witnesses, and comes to a decision contrary to what a party expects is not, standing alone, grounds to grant a motion to amend or alter the judgment. Accordingly, the court will deny this motion.

## IV. Conclusion

For the reasons herein stated, the court **concludes** that Plaintiff has not set forth sufficient legal or factual bases that would entitle him to a new trial, or that would cause the court to alter or amend the judgment. Accordingly, the court **denies** Plaintiff's Motion for New Trial or to Alter or Amend Judgment (Doc. 107).

**It is so ordered** this 5th day of May, 2017.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge